The next matter, number 23-1813, Patel v. Jaddou and number 23-1828, Manisha Gupta et al. v. Jaddou et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? Thank you, Your Honors. Good morning. My name is Brad Bannas. Could you be just a little louder and put this up? There you go. Absolutely. Yes, Your Honor. I've never been accused of being quiet. I apologize. My name is Brad Bannas. I represent the appellants in this consolidated cases. I would respectfully request four minutes for rebuttal. You can have three. Thank you, Your Honor. In 1976, Congress eliminated statutory requirement that an applicant for adjustment of status have an immigrant visa immediately available at approval. Since 1976, the executive has ignored that statutory repeal. And for that reason, today, this court has to address whether the executive can implement through policy, not a regulation, an eligibility criterion that Congress repealed. This is a serious question of separation of powers, and it impacts over 120,000 foreign nationals waiting for adjustment of status from the executive. This is a straightforward question of text, structure, and history. If we look to the text of 8 U.S.C. 1255, that's the statute of controls, adjustment of status, it does not, in any of its language, require a immigrant visa to be, quote, immediately available at approval. If we just step back here and look at the bigger picture, doesn't Congress put a limit on the number of these visas that may be granted? Yes, Your Honor. And isn't it a good thing for the government to try to estimate where someone is in line in respect to that limit? I agree. Sure, Your Honor. And if we're going to say that, then don't we have to recognize that there is, from time to time, going to be the need to recalculate the estimates as new information comes in? And I wonder, isn't that what's going on here, is the Attorney General is estimating where people, how far down the line it's going to go, how many people in the line, and then has to recalculate? Well, Your Honor, the Department of State's in charge of maintaining how many visas are being used per year. And in the last five years, there's been one fiscal year, the year where this case is all started, Your Honor, where they actually used all the visas available. What's much more common from this process you described is visa wastage in the 10s and 20s, 30s, 40,000 a year. And that's because of this retrogression hold policy. When the Department of State pushes the priority date forward, and hundreds of thousands of people in the regulated community apply for adjustment of status, under the statute, they are entitled to a final decision. And what the agency is doing now is changing their estimates, Your Honor. They're changing their estimates to preclude newer applicants from filing adjustment of status. We don't have any qualms with that, Your Honor. But now they're refusing to get through the backlog by saying they have to have an immigrant visa immediately available at filing. And I want to be very clear, this is not an exercise of discretion by the agency. The agency's own brief on page 21 says that you have to have an immediate availability at filing. You said at filing. Do you mean at approval? Yes, or at final decision. Yeah. At filing, you agree it has to be there. They have to have an immediate availability at filing. Absolutely, Your Honor. Yeah. That's right. And the agency says they cannot lawfully approve an I-485 application if an immigrant visa is not immediately available. That statement has no support in the text, the structure, the history of the statute, or any of its regulations. But I think the thrust of the question from Judge Chiara is if it was required, we read the statute your way so that you have to make it even when it's not immediately available. Why wouldn't there be a risk of wastage resulting from that? Because you agree that there could be a gap in time as to if I approve, right? Then what follows after it's approved? Is it immediately issued? Yes, Your Honor. There's not a background check or anything like that, or that's all preapproval? When they file for the adjustment status, I-485, and these were all filed in 2020, they do their fingerprints, they do their medicals, and those are all submitted. Right now, they're just sitting in cold storage because of the retrogression of the visa bulletin. And because of that retrogression, the agency says, we do not have statutory authority to approve these. That retrogression hold policy is taking tens of thousands- I'm asking a different question. On your view, what would happen? You file, it's immediately available at the time of filing. You agree that has to be true? Yes, Your Honor. How long, on your view of the world, if they were doing it the way you wanted it, would it take to get the approval? Your Honor, I think it's reasonable to take 6 to 18 months for an approval. Okay, 6 to 18 months to get the approval. And once the approval happens, is the visa then immediately issued? Your Honor, when USCIS approves the green card, the Department of State is required to allocate a visa number. It's kind of at the same time, Your Honor. In fact, if you go to one of these interviews, the last thing the officer across the table does is check- They allocate the visa number, and then what happens until you- is getting the visa number that's all you need? Correct. And the approval of the I-45, they come at the same time. So the next thing is two weeks later, they get their lawful permanent resident card, or what most folks call a green card. And so that's where all of the- With the gap between getting the green card and the visa number is two weeks, usually? It's just mailing, Your Honor. Okay. Production of the card and mailing. And so, no, our approach avoids wastage. It provides this backlog of people that when there are visas available, and by that I mean today, by law, on April 1st of 2024, the agency cannot have issued more than 54% of the immigrant visas available for fiscal year 2024. So that means today there are visas available in the fiscal year 2024 visa store. They just won't give them to my clients because- I believe in fiscal year 2024, 54% of the immigrant visas available would be somewhere around $120,000, Your Honor. Now, the country caps are in place, so my clients are from- their visas are chargeable to India, and I- So wouldn't a lot of these people just automatically get denied because the limits are being exceeded? Your Honor, the agency has zero authority to deny my clients visas because there's no requirement that there be an immigrant visa immediately available at approval. There would be no basis for them to deny right now. So they could do more than- what's the limit, $160,000? Your Honor, so that takes us to 8 U.S.C. 1255B that says, upon approval from the U.S.C.I.S., Department of State has to allocate a visa number up to the amount authorized by law. We do not argue that if there are not visas available, okay, under all of the country caps, the fiscal year caps, all the limits back in 8 U.S.C. 1151 and 2, that we should be able to get a green card. That happened in September of 2022. For about three weeks, they ran out of immigrant visas. And so those were denials? They did not get denied. They just didn't get decided because October 1st- But under your approach, wouldn't they have to decide them? No, Your Honor. Well, I thought you didn't want people put on hold because there weren't enough. You wanted them processed. Your Honor, if there are no visas available during a fiscal year- No, but how about if there's a visa available at the time they get up to right before the hold, but then as time goes by, more people come in, and so there aren't visas available. So this is where the government takes advantage of Congress's very difficult terminology. When I use the word available, I mean that during the fiscal year, the agencies have not issued every possible immigrant visa in the employment-based category. The statutory language is authorized to be issued, and you'll see that in 8 U.S.C. 1255B. That is a different requirement, Your Honor, than the requirement that one be, quote, immediately available. The Department of State indeed controls the visa bulletin, and that defines who has visas immediately available. My clients had visas immediately available at filing, so they filed for their adjustment of status. The agency then pushed back the priority date. It retrogressed by more than two years. They remain retrogressed today, but because they filed properly when there were immigrant visas immediately available, there is no source in the law for the agencies to refuse at this point, to put on hold. But just answering to this point, you're acknowledging that there is a circumstance in which it's not available at all. Correct. What's that circumstance? What's that scenario that you're imagining, and then what happens in that scenario, and how is it different than the scenario that you say they're now implementing that's problematic, in which they're saying it's not immediately available? So in September of 2022, the agencies put out a joint notification that said on September 6th of 2022, they had issued every immigrant visa available under the sun for fiscal year 2022. At that point, the visa store is empty. Nothing on the shelves. And at that point, you imagine they can hold? Absolutely, Your Honor. And they hold for three weeks. Because every other fiscal year, when you get to September, there's 10,000, 20,000 yet to be used. And in October... So I get that. So you're saying in the scenario that's now happening, there are available, they haven't hit those caps. And so what are they doing when they say it's not immediately available? What is the mechanism by which they can conclude, even though it's available, it's not immediately available? What is the feature of the system that makes something not immediately available at that point even though it's available? What's called the current date on the Department of State's visa bulletin. Currently, as of April 2024, that sits at April 15, 2012. That means you have to have filed your immigrant visa. And how are they setting that? What's the logic that's leading them to set that? Your guess is as good as mine, Your Honor. That's a better question for the government. I see no rhyme or reason to it. But you see a rhyme or reason to it at the time of filing. And Congress certainly did, because they require it to be immediately available. In other words, what is the thing that is being measured by assessing whether something is immediately available? Obviously, it's a meaningful thing to Congress because they require it to be true at time of filing. Even if things are available in general. So what's the logic of it at time of filing? Your Honor, I think that the logic is that there are country caps in place and there can be waits. We don't dispute that there can't be waits. And that is the Department of State's best estimate of how many, at what date. So I guess what I'm not following is if it's logical to make that estimate at the time of filing because it serves the purposes of making sure that we don't issue them when we don't have them, why is it any less logical to do that at the time of approval? Your Honor, we don't fight the visa bulletin system. They can continue to move the dates. But what is not logical is by moving that date backwards to take into account later filings to indefinitely delay my client's petition that was filed on the term. But wouldn't your logic also suggest you shouldn't need to require it at the time of filing either? No, Your Honor. Why? What is the difference? Congress requires it. Yeah, but why do they? If you're saying they have no reason to do it, then I guess I just am not understanding with the force of your argument because then you're saying, well, there's no good reason to do it then. So therefore, even though they've been silent on it, we just have to assume it's irrational to do it later even though they thought it was rational to do it at the time of filing. Your Honor, if I may answer. Yeah. I want to answer it two different ways if you'll humor me. One, Congress tried every other way. In 1952, they required immediately available at both filing and approval. 1960, they say, you know what? That's not working. We're going to say only immediately available at approval. Then in 1976, you know what they say? The one House report that put forward the technical amendments to the Immigration and Nationality Act, not exactly front-page reading, Your Honor, said we are going to designate the time of filing to determine when the visa number is immediately available. They repealed immediately availability for approval and did it at filing. Their rationale in 1976, Your Honor, is not apparent on legislative history, but we know that they considered it. Go ahead, Judge Kennedy. Can this happen? It would help if you would actually walk us through the way the process works. As I understand it, you file an I-485. You can only do that if the government determines that at that moment there is immediate availability. But it's going to take a while to process the application. And as I understand it, it's possible that during that period of time where they're processing the application, they realize there won't be visas immediately available or green cards immediately available at the end of processing it, in which case they would have to deny it. So instead of denying them, they put them over on hold and redo their estimates. That's what I'm understanding happens. Correct me if I'm misunderstanding it. Yes, Your Honor. I think you've got it right except for the conclusion at the end where they would have to deny them. They cannot deny them for an immigrant visa not being immediately available at approval because there's no statute, regulation that requires it. I guess the way they do deny them, if it's not immediately available now, and you're saying that wouldn't make any sense, right? Or do they not? They do not, Your Honor. They put them on an indefinite hold, this thing called a retrogression hold policy. They send them back to Missouri in cold storage and sit there. Thank you, Your Honor. But can't you, by the fact that Congress imposes a limit, can't you read that as a bar to granting a green card that would put the country over that limit? Your Honor, our position does not conflict with that. We do not argue that when there are no visas available that we can get... Because you're saying immediately available and availability turn out to have no correlation. Is that your point? They are two totally different concepts, Your Honor. Yes. That's right. Are they related? Of course they are. Well, what's the relationship? That's what I think we're trying to figure out because if there's some logic to the relationship, then it seems to make more sense that since they're relying on that logic at time one, they've chosen to rely on it at time two also. Your Honor, whether something is authorized to be issued under the language 8 U.S.C. 1285B, I'm using the word available for that. That means during the fiscal year from October 1st to September 30th of the following year, are there still immigrant visa numbers available? Again, the only time they've hit that in the last eight fiscal years is in 2022. So typically there's always visas available. Immediate availability is the Department of State's estimate of who, during the next fiscal year, will be able to have an immigrant visa available to them. And so that time of processing, Judge Kayata, is built in to the estimate of when something is immediately available. But what Congress intended here is that once you are current and you file for that green card, you have the certainty, the certainty that retrogression is not going to impact the natural course of your green card. So having my clients in green card status for almost five years now violates congressional intent. So if we were ruling away, then therefore tomorrow the government had to take everyone out of quote-unquote cold storage and move forward with them, would that put the government over the limit set by Congress? Your Honor, under the country caps, they can only issue 54% for this fiscal year as of March 31st, halfway through the fiscal year, so yesterday. They can only do 27% more during the next quarter. The fourth quarter of the fiscal year, they can do as many as they want or as little as they want, as long as they reach the final cap. So some would be denied then? No, Your Honor, they do not deny applications. Those people would be held? Well, until the visa numbers ran out for fiscal year 2024. Yeah, but they would be held for a period of time but then the clock would start up and they'd get picked up. That's your view? Correct, Your Honor, yes. But no one would be denied? No. So the holding would just take place later in the process? The... The cold storage would occur at the end of the process instead of at the application of the 485. Cold storage should never take... Well, hold, they'd be on hold. Your Honor, this would give the agency the ability to actually decide these on priority date order because right now... But just to answer his question, we're trying to figure out, on your view of the world, the possibility of having to hold some people could occur, correct? I think it would occur... Less, you think it would occur less, right? I think it would occur much less and I think it would occur when they actually run out of immigrant visas each fiscal year if that were to occur. And your thought is that the structure of the statute tells you that has to happen and in the absence of a statute telling you that has to happen, there's no good reason to do it because it just burdens people unnecessarily. I think the affirmative way of saying that, Your Honor, is that the agencies admit they have a duty to make a final decision on I-45 applications and to choose to not make decisions on 505 applications. They need to show an exception, some sort of statute, regulation, some sort of binding authority that they don't have to make a final decision. Otherwise, it's an unlawful withholding. Thank you, Your Honor. Judge... Oh, wait, Judge Lopez, did you have any questions? Counsel, if you could just very concisely articulate what, if you were to prevail, what do you want us to order the government to do? Please articulate that as precisely as you can and then explain how that order that you would like us to issue affects the way in which the government now does business. Your Honor, we are seeking an order to compel the agency to issue final decisions on lawful permanent residency applications for four plaintiffs, folks in this case. This is not a class action. This is for four plaintiffs. In that decision, I think you would have to set aside the policies of these retrogression hold policies. How that would impact other folks in a similar situation is I do think that the agency would have to go through and use all the visa numbers they could. And there's a backlog, I believe, of 120,000 of these applications. Those cannot be done by the end of this fiscal year. It's going to take four or five fiscal years to get through all of those. I recognize that, Your Honor. But these folks have filed in the fall of 2020. And this is not, I think, very different than a lot of cases in the federal courts today. This is not an unreasonable delay case. This is a pure unlawful withholding case. And if they are unlawfully withholding, we do not look at the equities and ask them why and how this is working. Instead, we compel the actions of being unlawfully withheld. And unfortunately, policies can't trump the best reading of a statute. That's what the Supreme Court told us in Patel, a case that my opposing counsel relies on heavily. I hope that answers your question, Judge Lopez. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, if counsel for the appellees will please introduce themselves on the record to begin. Good morning, Your Honors. May it please the court, my name is Alessandra Faso, and I represent the government in this matter. The discussion that Your Honors just had with opposing counsel in this case is really illustrative of why this court should affirm the district court's decision finding a lack of subject matter jurisdiction in this case. There are so many decisions that go into the adjustment of status process. And in 8 U.S.C. 1255 subsection A, Congress specifically I don't want to not discuss subject matter jurisdiction, okay? And I want to make sure you have time to do it. But since there's a lot to keep in my head, and we're just talking now about the merits assuming there's subject matter jurisdiction, which I assume you also think they're wrong on, even if we got to it. Could you just start by addressing that? Certainly. So the way that counsel has described the amendments to 8 U.S.C. 1255 I don't think means what he wants it to mean. So as we briefed and as was discussed, Congress went through a series of amendments to the adjustment of status statute. In 1952, requiring that a visa number be available at filing and approval. But in 1952, the Secretary of Homeland Security had very limited discretion in implementing regulations to move that process forward. Moving to 1960, the visa needed to only be available at approval. So even if a visa wasn't immediately available to that applicant at the time of filing, they just needed to wait until the visa was approved. And then the regulations, in turn, expanded to allow the Secretary of Homeland Security to implement regulations for that process as required. And then we moved to 1976, where, excuse me, let's back up to 1965, where there was a regulation put in place by the agency that allowed individuals to file their adjustment of status applications before a visa was available to them. So about 90 days before they could lodge their application to alleviate some hardship, still requiring that visa to be available at approval. 1976 comes along. Congress changes the statute to require that the visa only be available at filing. And you mean immediately available there? Yes, immediately available, excuse me. So essentially doing away with that regulation that allowed applicants to file early before their visa was immediately available. And it's important to note that in 1976, there's wide discretion for the attorney. Just so I get the, was that the reason for the change in 76? To get rid of that rule? It could be interpreted that way. At the time that that change was made to get rid of that rule, was the background system that it did not need to be immediately available at approval? Or that it did? It did need to be immediately available at approval. And when they made the change, not only did they get rid of the rule, but they also repealed the requirement that it be immediately available at approval, correct? So that language was removed from the statute. And so? So why wouldn't we read it to be that the agency guessed wrong? The agency had it backwards. The agency had it. They were saying you need it to be immediately available at filing, but not at approval. And the agency had it the opposite way. Congress then intervened and said, no, do it the other way around. So the history of the statute is a little bit unclear as to that conclusion. But we can look at this as a way that Congress was saying, okay, we're going to try it this way. We're going to try it a different way. And then they landed on the 1976 reading of the statute. And I'll note that throughout this entire process, subsection B, 1255B, never changed. It always required the Secretary of State to reduce by one the number of immigrant visas for the fiscal year then current. That has never changed. And so in our briefing, we discuss the 1979 legacy INS legal opinion that kind of discusses what changed and how the agency was going to basically come into compliance with this statute, the statutory amendment. And the legal opinion clarified that during this time of statutory change, the agency had issued an operations instruction basically announcing this hold policy, saying that just because once an application lands on an adjudicator's desk, if it happens to be during a month where the priority date is not current, meaning a visa is not immediately available to that applicant, it does not mean the adjudicator needs to deny that application just because of bad timing. And so then for purposes of fundamental fairness and equity, the agencies have essentially said instead of denying these applications when they cannot be approved due to the regulations, we're going to just postpone adjudication until they can be approved. But why can't they just be adjudicated then? They can't be adjudicated, Your Honor, because there are other people in line before my colleagues' clients and before. But what about his point, if I'm following it, that the cap will never be reached, even though there are other people in line. And in the instance in which it is reached, because they're truly not available as an actual cap, regardless of your estimate, then you could hold. In a perfect world, perhaps, but there are. Why don't we want to be in a perfect world? Your Honor, frankly, I would love that. But you wouldn't because you're defending very vigorously the imperfect world. So why? So there are quarterly caps, there are per-country caps, there are yearly caps. And so to the extent that the agency has a visa immediately available for that applicant based on their priority date, that's the important thing. The counsel's arguing that there are visas available. That is true. I mean, there are visas available, but they're queued up for people who have filed their applications earlier and whose applications have a current priority date based on the visa bulletin. Do I understand the estimates for someone coming from India, for example, have to incorporate some estimation of how many people in other countries would not use the allocation for that country, which then may spill over to India? So there is a 7% cap per country. And that's really the reason why we're here, right, is because the applicants in this case are Indian nationals, and that category is so oversubscribed. So if they were from the U.K. or from a country that there weren't as many applicants for, they would likely have a decision. But unfortunately, because of the way that Congress structured the statute, there are, unfortunately, those kinds of statutes. Is this a way of saying that the overall number of available visas is sort of an irrelevant number for purposes of the practical operation? What matters is available to you given your country of origin. Yes, Your Honor. That's actually a great way to rephrase. It's immediately available to you, right? No, available to you, not immediately available. Correct. Why would an estimate not be accurate? That's what I'm getting at. If it's just 7% and it's not going to be 7.1 and it's not going to be 6.9, and you know when someone applies today how many people have applied before that person, you would think an estimate would be 100% accurate. But there's something else going on that precludes the estimate from being accurate. What is that? Your Honor, there's a lot that goes into the estimates by the State Department. And so it's important to note that there are kind of two pools of how you get your green card, right? In the United States, you can adjust your status, or you can get a green card from a consulate abroad, and that is the State Department's whole process. And so the consular officers and USCIS adjudicators both have to communicate to the State Department saying, okay, these are how many visas we're adjudicating, this is how many people are applying, and that's where the State Department is getting all of their information for projection purposes in the Visa Bulletin. So it's not a perfect process, but in certain instances, I'll use the example of the time that the applicants here filed in 2020. There were a ton of immigrant visas available because the consulates abroad were essentially shut down, and so they weren't issuing green cards, so then a ton became available. So they were able to step in line, file their application, and now they remain pending because there were also tons and tons of applicants at that time. If I'm following, even on your opponent's view of the world, if it came to be that at the time for approval, the cap had been hit and there really was no available visa, you just could not issue one. In that circumstance, he says, then you would hold it just like you do now. Correct. Okay. Wouldn't there be some value to people knowing that they had approval sooner than this system allows them to even know that? Certainly. So what is the reason to deny them the value of that earlier approval? What is behind this that makes it necessary to put people in a situation where they have a pending application for years and years, not knowing if it's approved, versus being in a situation where you had approval, you know I have that security, and the only thing I'm waiting for is the cap to be lifted, rather than I don't know whether it will be approved. What's the reason to set it up that way? So there are certain facets of this process that affect, and again, to your Honor's question about why these estimates are off. So in the employment-based immigration process, there's an I-140, an immigrant visa petition that the employer files to establish eligibility, to even get an employment-based green card. That comes before the I-485. But in the employment-based space, you can file those two applications together. And so before USCIS has even deemed that applicant eligible for that visa, they can file for their green card. And so what happens if the agency issues an immigrant visa to that person, and then the agency later determines that they're not actually eligible for the I-140, or for the visa classification that they're asking for? That's going to end up in a visa that's lost, and if it's too late in the game, they can't roll that visa over so that it's wasted. So those intricate details as to how this process works, they all go into the estimates, and they all go into why 1255B and the regulations at 245.2A5 subsection 2 require the visa to be available at approval. Is it the case on a macro level, is it the case that Congress has set a limit on the number of visas that can be granted? There is out there more people who are likely qualified who want those than there is that limit. Correct. And yet at the end of an average year, fewer than that limit are granted. Sometimes that's the case. It seems like there's something wrong with the system then, that it would be that you would have more qualified people applying, and yet the limit not even used up. Yes, however, the fact that the rate at which the agency is adjudicating these is kind of a separate concern. In all honesty, I have a sneaking suspicion that the burdensome nature of having to adjudicate these is what lies behind this policy. Is that true? Yes, Your Honor. Convenience is a pejorative word. I don't mean it that way. But if they had to adjudicate them all when they came in, they couldn't with their current staffing. Is that the basic problem? Staffing is certainly an issue. But even if USCIS was adjudicating these at a rate that was acceptable to my colleague, there would still be caps, and adjudications would grind to a screeching halt at the end of that quarter or when the country caps were hit. And they would still argue that a visa should be issued at filing. He says no. He says no. He says he wouldn't. He said you could hold it then. You wouldn't have to deny it, and you could hold it because you didn't have anyone you could grant it. Do you want to say anything about the subject matter jurisdiction? Yes, very briefly. The district court correctly held that 8 U.S.C. 1252 A2B subsection 2 precludes this court's subject matter jurisdiction because the operative statute in this case, 1255 A, explicitly provides the Secretary of Homeland Security the discretion to essentially operate the adjustment of status process. On that point, I just don't quite understand how to marry up that very plausible argument with the nature of the claim here, if I understand it, which is that there's a statutory prohibition against that exercise of discretion. Does 1255 A preclude us from having subject matter jurisdiction even if the statute said expressly what he wants us to order it saying? He would say that 1255 A precludes us from enforcing that statutory prohibition? If I may answer your question. Just because the statute prohibits, or rather, 1255 B and the regulations prohibit USCIS from approving an adjustment of status application when there's no visa immediately available to the applicant. Suppose the statute said you cannot do that. Would 1255 A deprive us of subject matter jurisdiction if you kept doing it? Yes, it would because at the end of the day, adjustment of status is a discretionary process. What does that mean if it says it's a discretionary process subject to the statutory prohibition against doing it that way? Right, but just because once an adjudicator gets an application on his desk and he has three options, well, two options really, deny because there's no visa immediately available or in his discretion, put that application on hold because nothing in the statute requires that the adjudicator approve that application. What I'm saying is that seems like a merits point. That's just a question of whether it requires it. He's saying the statute does require. So then I'm wondering, does 1255 A still stand in the way of our subject matter jurisdiction? If we accept that, I mean, they become intertwined, it seems to me, the merits of the subject matter jurisdiction. And I would point your honors to the 20-J letter that we filed from the Eighth Circuit's recent decision in Tigul versus Jadu where they grappled with that issue. And it is our position that the discretion is committed to the Secretary of Homeland Security, and just because there's a prohibition on approval when there's no visa immediately available does not prohibit the agency from exercising their discretion. Judge Lopez, anything further? Nothing. Thank you. I have one further factual question. Once someone properly applies for an I-485, is their place in line fixed? In other words, no one can get in front of them who's not in front of them that day, although someone could drop out who's in front of them. That's correct. So the only variables, then, once you get a priority date, the only variables are people dropping out of the line who are in front of you or caps being used up that are in front of you. That's correct. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellant would please introduce himself back on the record. He has a three-minute rebuttal. Thank you, Your Honors. Brad Banas for the appellants. My opposing counsel just claimed that they decide all of these applications in order. That's simply not factually true. That's not an issue here. But I can tell you I filed 100 of these cases in the summer of 2022, and I got people from 24 of their green cards. Now I have the client here from April of 2012, excuse me, August of 2012. Could that be because there are different lines? In other words, someone could be in the Indian national line and someone else could be in the Great Britain line. So even though in the macro line the Great Britain one is later, their offshoot goes faster. That would explain it. Your Honor, I can represent to you that my clients were all Indian nationals because these delays impact them disproportionately to rest of world categories that aren't backlogged. Why aren't you pressing that point? Because the statute actually says no one can get in front of you. You're supposed to do it in order, right? I agree with you, Your Honor. It does. But the agency's ad hoc process they've made since 1976 doesn't give them the ability to do that. It's not a matter of resources. It's a matter of them ignoring the congressional structure of this process and doing it on their own. Congress very clearly rejected the very policy that the agency is here defending today. They repealed it from a statute. What else do they have to do? Well, they could prohibit it. That's true, Your Honor. They didn't do that. That's why we're here and that's why it's hard. It is hard. But I will say this. Nothing in the regulations requires an immigrant visa to be immediately available at approval. Nothing. The regulation that the Ninth Circuit pointed to in Bavaria in a case I lost, it was a regulation from 1965 that says this still today, to adjust status. I'm sorry. You're not making a claim just to be clear that they have to do this by regulation. Maybe you could, but that's not before us. The only argument you're making is that statute prohibits what they're doing. You're not making an argument that even if the statute doesn't prohibit it, they can't do it the way they're doing it because they'd have to do it by reg or it's inconsistent with the reg, right? Yes, Your Honor. I just want to point out my opposing counsel tends to say the regulations require this. It doesn't. So this idea that they would go and deny all of these that are pending lacks any legal basis whatsoever. If they were to deny these because there's no immigrant visa immediately available, there's no basis for that decision in the law. And I will just point out, Your Honor, this idea that this is some sort of discretionary process is wholly undermined by my colleagues' merits arguments. Their position is that they are lawfully precluded from doing this. They couldn't. If they wanted to settle our case, they couldn't would be their position. And the Supreme Court in the most recent DACA case kind of affirmed this, but this is from the Ninth Circuit's report of the opinion. It says, an agency's non-enforcement decision is presumptively reviewable if it is based solely on a belief that the agency lacks lawful authority to do so. Here, the agency believes it lacks authority to approve my client's petitions, which is in violation of the text, structure, and history of INA. Thank you, Your Honors. Thank you. Thank you, counsel. That concludes argument in this case.